IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT

2011 MAR 11  AM 10: 31

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| CHRISTOPHER ROSS LEFEVER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 110-120 |
| | ) | (Formerly CR 107-166) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The above-captioned case is before the Court on Petitioner's motion to vacate, set

aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons set forth below, the

Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action

be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

### A.     Criminal Proceedings

In December of 2007, a federal grand jury returned a 13-count indictment charging

Petitioner with nine counts of robbery of a commercial business, in violation of 18 U.S.C.

§ 1951; two counts of attempted robbery of a commercial business, also in violation of 18

U.S.C. § 1951; and two counts of using a firearm during a crime of violence, in violation of

18 U.S.C. § 924(c)(1)(A)(ii).  United States v. Lefever, CR 107-166, doc. no.1 (S.D. Ga.

Dec. 13, 2007) (hereinafter "CR 107-166"). A superseding indictment with identical charges

was entered in February of 2008 for the purpose of correcting Petitioner's middle name. Id., doc. no. 24.

The Court appointed Charles Henry S. Lyons, III, to represent Petitioner. Id., doc. no. 8. Pursuant to a negotiated plea agreement, Petitioner pled guilty to five of the counts of robbery of a commercial business and one of the counts of attempted robbery of a commercial business, as well as one of the counts of using a firearm during a crime of violence.[1] Id., doc. nos. 33, 34. Notably, in the plea agreement, Petitioner represented his understanding that "after entry of [Petitioner's] guilty plea, [Petitioner] has no absolute right to withdraw the plea. Thus, the Court is free to impose any sentence authorized by law up to the statutory maximum sentence." Id., doc. no. 33, p. 10. Petitioner further represented his understanding that "the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by [Petitioner's] counsel or the United States Attorney." Id. at 11. Finally, in his plea agreement, Petitioner "advise[d] the Court that [he] understands that if the . . . sentence imposed by the Court is more or greater than [Petitioner] expected . . . the defendant will still have no absolute right to withdraw the guilty plea." Id. By affixing his signature to the plea agreement, Petitioner explicitly swore and affirmed under penalty of perjury that he had read the entire plea agreement, understood its terms, and that all representations made therein were true. Id. at 16.

At the Rule 11 colloquy, Petitioner informed the Honorable Dudley H. Bowen, Jr.,

---

[1]The remaining charges from the superseding indictment were dismissed in exchange for Petitioner's guilty plea. CR 107-166, doc. nos. 33, 34.

United States District Judge, that he had enough time to discuss and prepare for his case with Mr. Lyons. Id., doc. no. 62, p. 4 (hereinafter "Rule 11 Tr."). Furthermore, Petitioner informed Judge Bowen that he was satisfied with Mr. Lyons's preparation and his handling of Petitioner's case. Id. Judge Bowen also asked Petitioner, "Has anybody given you any other deal or promise or hope of benefit in order to get you to Plead guilty?" Petitioner responded, "No, Your Honor." Id. at 18. In a similar vein, Judge Bowen asked Petitioner, "Has anybody tried to give you any guarantee or prediction or prophecy as to what sentence I would actually impose in your case?" Again, Petitioner responded, "No, Your Honor." Id. at 18-19. Moreover, Judge Bowen asked Petitioner, "[H]as anybody forced you, pressured you, or threatened you into pleading guilty?" Petitioner once again responded, "No, Your Honor." Id. at 16.

Judge Bowen proceeded to advise Petitioner of the charges in the superceding indictment to which he was pleading guilty and also explained the maximum statutory penalty that might be imposed in the event of Petitioner's conviction.[2]  Id. at 5-13. Additionally, Judge Bowen ensured that Petitioner understood that, in calculating his sentence, Judge Bowen would use the Federal Sentence Guidelines Manual (the "Guidelines"), an advisory manual meant to help judges arrive at sentences in particular cases. Id. at 16. Following this, Judge Bowen summarized the substance of Petitioner's plea agreement. Id. at 16-18. After summarizing the plea agreement, Judge Bowen asked

---

[2]Specifically, Judge Bowen explained that his maximum sentence could be as much as a life sentence added to a 120-year sentence, along with $1,500,000.00 in fines. Rule 11 Tr., p. 12. Judge Bowen further explained, "To put it bluntly, Mr. Lefever, if somehow all of this were added up, it could be beyond the term of anyone's natural life . . . ." Id. at 14.

Petitioner if the summary was in accordance with Petitioner's understanding of the plea agreement, to which Petitioner responded, "Yes, Your Honor." Id. at 18.

Next, Thomas Johnson, an investigator with the Richmond County Sheriff's Office, testified to the factual basis for Petitioner's guilty plea. Id. at 19-30. Mr. Lyons cross examined Officer Johnson, primarily regarding the factual basis for the firearm charge. Id. at 30-33. At the conclusion of Officer Johnson's testimony, Judge Bowen asked if Petitioner had any disagreement with the testimony. Id. at 33. Petitioner agreed with the bulk of the testimony but did not agree that he had used a real firearm during the robberies.[3] Id. After determining that there was a factual basis for the plea to the firearm charge, Judge Bowen reiterated Petitioner's constitutional right to plead guilty or not guilty to the charge. Id. at 37-39. Judge Bowen then asked Petitioner if he wanted to plead guilty to the firearm charge based upon the factual basis proffered by the government, to which Petitioner responded that he was pleading guilty to the firearm charge, as well as the other charges specified in the plea agreement. Id. at 40.

After Petitioner's guilty plea was entered, the Probation Officer prepared a Presentence Investigation Report ("PSI"). The PSI recommended that Petitioner be assigned total offense level of 32 under the Guidelines. PSI ¶ 85. The PSI also provided that Petitioner's past convictions yielded a total of 21 criminal history points, which required assignment to a criminal history category VI. Id. ¶¶ 133-34. Petitioner objected to certain recommendations in the PSI – namely, that he be given a two level enhancement for

---

[3]Petitioner maintained that he used an air gun that shot rubber pellets during the robberies. R. 11 Tr., pp. 33, 37.

4

obstruction of justice and denied a three level reduction for acceptance of responsibility.[4] Id., addendum.

On September 10, 2008, Judge Bowen conducted a sentencing hearing. CR 107-166, doc. nos. 46, 53. At the sentencing hearing, Judge Bowen sustained Petitioner's objections to the PSI, which resulted in no enhancement for obstruction of justice and a reduction based on acceptance of responsibility. Id., doc. no. 53, pp. 54-55. Judge Bowen specifically declined to announce a total offense level or a criminal history category, but concluded that, given the charges and Petitioner's status as a career offender, the range under the Guidelines was 262 to 327 months imprisonment. Id. at 56. Judge Bowen stayed within that range and sentenced Petitioner to 322 months of imprisonment (240 months concurrently on each of the robbery counts and 82 months consecutively on the firearm count). Id. at 62.

Petitioner filed a direct appeal in which he argued that his guilty plea was invalid because there was an insufficient basis for the plea and because the government conditioned its willingness to enter into a plea agreement on the inclusion of the firearm count. The Eleventh Circuit rejected these arguments and affirmed Judge Bowen's decision. United States v. Lefever, 343 F. App'x 595, 597 (11th Cir. 2009) (per curiam). Following his unsuccessful direct appeal, Petitioner timely filed the instant § 2255 motion. (Doc. no. 1.)

**B.     Issues Raised In § 2255 Motion**

Petitioner raises the following three grounds for relief in his § 2255 motion: (1) that

---

[4]These recommendations were based on Petitioner's statements to Judge Bowen and the probation officer that he used an air gun, rather than a real gun, during the robberies. PSI ¶¶ 28-31. These statements conflicted with the grand jury testimony of Petitioner's accomplice, Brian Cates, who stated that Petitioner used an actual gun during the last two robberies. Id.

his trial counsel was ineffective for failing to immediately convey a plea offer that was more favorable that the offer pursuant to which Petitioner agreed to plead guilty; (2) that his trial counsel was ineffective in that he "coerced" Petitioner into accepting the plea offer by erroneously informing him that he would receive a sentence not to exceed ten years; and (3) that his appellate counsel[5] was ineffective for failing to raise certain issues on appeal. (See generally doc. no. 1.)

### C.    Evidentiary Hearing

On February 17, 2011, the Court held an evidentiary hearing in this matter.[6] (Doc. no. 8.) The primary purpose of the hearing was to resolve the factual dispute as to whether Petitioner's trial counsel failed to convey an initial plea offer to Petitioner. (See doc. no. 6.) However, the Court also heard evidence relating to the plea negotiations and the issue of whether Mr. Lyons led Petitioner to believe that he would receive a sentence lower than the one that Judge Bowen gave him. The Court heard testimony from the following individuals: (1) Mr. Lyons; (2) Petitioner; (3) Patricia Rhodes,[7] the Assistant United States Attorney who prosecuted Petitioner's criminal trial; and (4) Craig Dallas, the U.S. Probation Officer who prepared Petitioner's PSI.

---

[5]Mr. Lyons also represented Petitioner on appeal.

[6]The Court appointed Mr. John R. Taylor for the purpose of representing Petitioner at the hearing. (Doc. no. 6.) The scope of Mr. Taylor's representation shall include filing any objections to this Report and Recommendation.

[7]Ms. Rhodes's name was Patricia Johnson at the time of the Petitioner's criminal proceedings. To avoid confusion, the Court will refer to her only as Ms. Rhodes in this Report and Recommendation.

## 1. Testimony of Mr. Lyons

At the evidentiary hearing, Mr. Lyons testified that as part of the plea negotiations that took place in his representation of Petitioner, he received a plea offer from the government around the first week of February 2008. (FTR 10:16:11 - 10:17:12.)[8] According to Mr. Lyons, the offer was for Petitioner to plead guilty to several of the robbery counts and one of the firearm counts. (FTR 10:17:12.) The offer did not include any provision guaranteeing Petitioner that a certain sentence would be recommended by the government or given by the sentencing judge. (FTR 10:17:32.) Mr. Lyons met with Petitioner on February 8, 2010, at which time he conveyed the government's plea offer to Petitioner and told Petitioner that he would could receive a lengthy sentence if he accepted the offer. (FTR 10:17:46.) Consequently, Petitioner indicated that he would rather take his chances at trial than accept the offer. (FTR 10:18:55.)

The day after the meeting, Mr. Lyons sent a letter to Ms. Rhodes in which he memorialized his meeting with Petitioner and communicated Petitioner's rejection of the plea offer. (Resp. Ex. 6.) In the letter, Mr. Lyons indicated Petitioner's willingness to agree to plead guilty to charges that would "place him in the 13-year prison range," as that would be comparable to the plea agreement between the government and Mr. Brian Cates, Petitioner's accomplice in the robberies. (Id.) Ms. Rhodes rejected the 13-year counteroffer. (FTR 10:20:52.)

Because Petitioner "really didn't have any defense," Mr. Lyons remained eager to

---

[8]Although a transcript of the February 17, 2011 hearing has not been prepared, the Court was able to review the proceedings on the Court's recording system, For the Record ("FTR").

facilitate a plea deal.[9] (FTR 10:23:03.) Around this time, Petitioner communicated to Mr. Lyons that he would be satisfied with a sentence of 18 to 19 years. (FTR 10:22:15, 10:23:38.) In order to determine whether the sentence Petitioner had in mind was realistic, Mr. Lyons consulted with Ms. Rhodes regarding the applicable range under the Guidelines for the charges from the previously-rejected plea offer. (FTR 10:20:57.) Ms. Rhodes referred Mr. Lyons to Mr. Dallas in the U.S. Probation Office, who, according to Mr. Lyons, indicated that a 19-year sentence would be near the top of the Guideline range for the charges to which he would have to plead guilty if he took the plea offer. (FTR 10:24:30.)

After Mr. Lyons communicated this estimate to Petitioner, Petitioner accepted the plea offer. (FTR 10:25:25; CR 107-166, doc. no. 33.) Mr. Lyons testified that, because of the information provided by Mr. Dallas, when Petitioner accepted the plea offer – the same offer that he had initially rejected – Petitioner expected to receive a sentence in the 19-year range. (FTR 10:26:16 - 10:26:50.) Petitioner was therefore upset with the PSI's inclusion of a Guideline range of 30 years to life. (Id.) Following the issuance of the PSI, Mr. Lyons sent a letter to Petitioner in which he indicated that the range in the PSI "exceeds what [he] understood [Petitioner's] sentence range to be and definitely what [he] informed [Petitioner] as to what was communicated to [him] about [Petitioner's] possible sentence." (Resp. Ex. 14.) Mr. Lyons expressed his opinion that Petitioner would not have accepted the plea offer if he had known that his range under the Guidelines might be as high as 30 years to life.

---

[9]Mr. Lyons unequivocally stated that, because of the evidence supporting the charges, Petitioner was "not going to win at trial in this case," and Mr. Lyons indicated that Petitioner understood this state of affairs. (FTR 10:53:40.) Mr. Lyons also opined that the plea entered was extremely advantageous to Petitioner because, in his view, a jury trial would have resulted in a conviction followed by a life sentence. (FTR 11:07:00.)

(FTR 10:29:00.)

However, Mr. Lyons stated that no one – including Mr. Dallas – ever guaranteed or promised that Petitioner's Guideline range or actual sentence would be 19 years. (FTR 10:46:40, 11:02:09.) Also, Mr. Lyons stated that the information about the possible 19-year sentence related only to the Guideline range; Mr. Lyons had made clear to Petitioner that the Guidelines were only advisory, and he never told Petitioner that he would receive an actual sentence of 19 years. (FTR 10:46:11 - 10:46:33, 11:00:09.) Additionally, Mr. Lyons clarified that the plea offer accepted by Petitioner was the same one that he initially rejected – the only plea offer ever made by the government in this case. (FTR 10:33:33, 10:48:24; see also Resp. Exs. 5 (draft of initial plea offer); CR 107-166, doc. no. 33 (plea agreement entered into by Petitioner).)

### 2.     Testimony of Petitioner

Next, the Court heard Petitioner's testimony. Petitioner testified that he initially rejected the government's plea offer because it contained no provision as to the sentence he might receive following his plea. (FTR 11:17:00.) According to Petitioner, he later decided to enter into the plea agreement, at which time it was his understanding that the government had agreed to a maximum sentence of 19 years based on the information provided to Mr. Lyons by Ms. Rhodes and Mr. Dallas. (FTR 11:17:58 - 11:20:07.) Petitioner also stated that Mr. Lyons had told him prior to signing the plea agreement that the sentence would be no more than 19 years, and would likely be closer to 15 years.[10] (FTR 11:19:10, 11:21:24.)

---

[10]Petitioner also testified that Mr. Lyons told him at the Rule 11 hearing that he would likely receive a sentence of around 10 years, in line with the sentence given to his accomplice. (FTR 11:25:30.)

Petitioner testified that he felt "shocked" and "misguided" when he saw that PSI provided for a Guideline range of 30 years to life; Petitioner stated that he would not have pled guilty if he had known that his range under the Guidelines would be so high. (FTR 11:20:28 - 11:21:26.)

However, Petitioner acknowledged having testified under oath before Judge Bowen at the Rule 11 hearing that he understood his guilty plea did not guarantee any specific sentence; he likewise acknowledged having testified under oath during that hearing that he understood the maximum sentence that could be imposed and that no one had coerced him or offered him any guarantee, hope of benefit, prediction, or prophecy as to what his sentence would be. (FTR 11:26:32, 11:35:51 - 11:44:00.) Petitioner stated that all of this sworn testimony was untrue, and that he had lied to Judge Bowen under oath because Mr. Lyons had instructed him to "keep his mouth shut" and "agree with everything" at the Rule 11 hearing. (FTR 11:26:40 - 11:27:22.)

Similarly, Petitioner acknowledged having signed the plea agreement, in which he swore that he understood the Court would be free to impose any sentence authorized by law and that "the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by [Petitioner's] counsel or the United States Attorney." (FTR 11:31:01.) Again, Petitioner stated that these representations were untrue, as he had only read part of the plea agreement before signing it and Mr. Lyons had not explained these portions of the agreement. (FTR 11:31:30 - 11:35:48.)

### 3.     Testimony of Ms. Rhodes

Following Petitioner's testimony, the Court heard testimony from Ms. Rhodes, who, as noted above, was the lead prosecutor in Petitioner's criminal case. Ms. Rhodes confirmed that Petitioner had only been offered one plea agreement during his criminal case; she also confirmed that Petitioner initially rejected that offer but eventually accepted it. (FTR 11:49:59 - 11:52:44.) Ms. Rhodes summarized the charges against Petitioner and the abundant evidence in support of those charges, which included statements by Petitioner's accomplice, witness statements, and video surveillance. (FTR 11:53:00 - 11:59:38.) Ms. Rhodes expressed that she had no trepidation about bringing Petitioner's case to trial based on this evidence, and said that it was her belief that Petitioner benefitted immensely from acceptance of the plea agreement. (FTR 11:59:40.) Based on her years of experience as a prosecutor, Ms. Rhodes believed that Petitioner would have been convicted at trial and received a life sentence; instead, he received a 27-year sentence, which would result in an actual sentence of approximately 23 years when adjusted for good conduct time. (FTR 12:00:15 - 12:01:40.)

Additionally, Ms. Rhodes testified that she did not specifically recall giving an estimate of the Guideline sentencing range for the charges in Petitioner's plea agreement. (FTR 12:01:50 - 12:02:35.) However, she testified that her practice is to refer individuals to the U.S. Probation Office for Guideline estimates and that even if she had communicated an estimate provided by the Probation Office, she would never represent the estimate as a guarantee of a particular sentence. (Id.)

11

### 4. Testimony of Mr. Dallas

The final witness to testify during the hearing was Mr. Dallas, a supervisor in the U.S. Probation Office. Mr. Dallas testified that he often gives defense attorneys Guideline sentencing estimates. (FTR 12:06:35.) Mr. Dallas had no specific recollection of having giving an Guideline estimate for the charges in Petitioner's plea agreement, but stated that he had no reason to doubt that he had done so. (FTR 12:06:45, 12:08:08.) Mr. Dallas further testified that when he gives such estimates, he always makes clear that they are only estimates; he said that he would never make a guarantee that the estimate would be the same as the Guideline range later calculated in the PSI or the actual sentence imposed. (FTR 12:06:45.) Indeed, when asked if he would ever give any guarantee as to an estimate, he stated "absolutely and unequivocally" that he would not. (FTR 12:09:00.) Mr. Dallas also indicated that it is not unusual to see a discrepancy between a pre-plea estimate and the Guideline range set forth in the PSI, as additional factors often come to light between the estimate and the PSI, such as prior convictions. (FTR 12:07:00, 12:09:20.)

Mr. Dallas confirmed that he prepared the PSI in Petitioner's case, and stated that Petitioner was classified as a career offender because of the firearm charge to which he had pled guilty and prior convictions involving crimes of violence. (FTR 12:10:29, 12:13:32.) Mr. Dallas testified that he did not recall any conversation with Mr. Lyons regarding the discrepancy between a Guideline estimate and the Guideline range set forth in the PSI. (FTR 12:15:38.) Mr. Dallas noted, however, that it was apparent from the PSI that Petitioner had raised objections to the PSI, and that such objections did not include any complaint about a discrepancy between an earlier estimate and the Guideline range in the PSI. (FTR 12:16:20.)

12

Having set forth the relevant background and the factual contentions at issue, the Court resolves the matter as follows.

## II.   DISCUSSION

As noted above, Petitioner has raised three grounds for relief in his § 2255 motion, all of which are premised on the allegedly ineffective assistance of his counsel, Mr. Lyons. As an initial matter, the Court is mindful that the plea agreement entered into by Petitioner contains a broad appeal and collateral attack waiver. CR107-166, doc. no. 33, pp. 5-6. However, such waivers typically do not apply to bar claims alleging ineffectiveness with regard to the entry of a guilty plea. Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365 (N.D. Ga. 2004) ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). Furthermore, Respondent recognizes the likely inapplicability of the waiver, and specifically declines to rely on it in its response to Petitioner's claims. (Doc. no. 3, p. 8 n.3 & p. 10 n.5.)

That having been said, the ineffective assistance of counsel claims in the instant motion are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880

13

F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir.

14

2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

With these governing standards in mind, the Court will address each of Petitioner's specific claims.

### A.    No Ineffectiveness of Counsel for Failure to Convey Plea Offer

In Ground One of his § 2255 motion, Petitioner argues that his trial counsel rendered ineffective assistance by failing to convey a plea offer. (Doc. no. 1, pp. 4-5.) In support of this contention, Petitioner alleges Mr. Lyons "failed to immediately convey" an initial plea offer pursuant to which the government would recommend a maximum sentence of 19 years, but instead "waited till the eleventh hour to convey an offer which far exceeded the original offer and ultimately resulted in the excessive sentence." (Id. at 4.)

Applying the Strickland framework to this claim, Petitioner must show: (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 688, 694. Rejection of a plea offer by trial

15

counsel without first conveying the offer to a criminal defendant typically constitutes deficient performance under the first prong of Strickland.  See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1994).  However, to prevail on the claim, Petitioner must also satisfy the second prong, which requires that he show prejudice resulting from his trial counsel's deficient performance.  To satisfy the prejudice prong in a failure to convey claim, the claimant typically must show that he would have taken the plea offer if he had known about it, such that there would have been a different result if counsel had conveyed the plea. Id.

Here, there is absolutely no factual basis for Ground One of Petitioner's § 2255 motion. Petitioner alleges in his motion that there was an initial favorable plea offer made by the government that Mr. Lyons did not communicate to him. (Doc. no. 1, p. 4.) However, the testimony of Mr. Lyons and Ms. Rhodes makes clear that there was only one plea offer made during Petitioner's criminal proceedings; Petitioner initially rejected that plea and later accepted it. (FTR 10:48:24, 11:49:59 - 11:52:44.) Moreover, Mr. Lyons communicated the plea offer to Petitioner within a week of receiving it. (FTR 10:17:46.) Petitioner did not controvert this version of the events in his testimony. To the contrary, he agreed that Mr. Lyons informed him of the plea offer as Mr. Lyons had testified. (FTR 11:17:00.) He further agreed that he initially rejected that plea offer, which shows that the offer was conveyed to him. (FTR 11:17:00.)

In light of these undisputed facts, it is apparent that the government made only one plea offer in Petitioner's case, and Mr. Lyons promptly conveyed that offer to Petitioner. Thus, Mr. Lyons cannot be said to have failed to convey a plea offer such that his

16

representation fell below an objective standard of reasonableness. Accordingly, Petitioner has failed to satisfy the first prong of Strickland with respect to this claim. Petitioner is therefore not entitled to relief on Ground One of his § 2255 motion.

**B.      No Ineffective Assistance of Counsel for Misinforming Petitioner Regarding Guilty Plea**

In Ground Two of his § 2255 motion, Petitioner claims that his "trial counsel coerced [him] into signing a plea deal" by misinforming him as to the terms of his plea offer. (Doc. no. 1, p. 4.) Respondent disputes this claim, maintaining that Petitioner pled guilty without any coercion or guarantee as to the sentence he would receive. (See doc. no. 3, pp. 10-13.)

In support of Ground Two, Petitioner alleges that Mr. Lyons indicated to him that if he pled guilty, he would receive a maximum sentence of 19 years and would likely receive a sentence as low as 10 to 15 years. (Id.; FTR 11:17:58 - 11:20:07.) However, in his signed plea agreement, Petitioner represented his understanding that "the Court is free to impose any sentence authorized by law up to the statutory maximum sentence" and "the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by [Petitioner's] counsel or the United States Attorney." CR 107-166, doc. no. 33, pp. 10-11. Furthermore, at the Rule 11 hearing, Petitioner gave his sworn testimony that no one had given him any other deal or promise or hope of benefit in order to get him to plead guilty. Rule 11 Tr., p. 18. Petitioner also swore that no one had given him any guarantee or prediction or prophecy as to what sentence would actually be imposed, and further stated that no one had forced, threatened, or pressured him into pleading guilty. Id. at 16. Additionally, Judge Bowen explained the advisory nature of

17

the sentencing guidelines and, after reviewing the terms of the plea agreement, received Petitioner's assurance that he understood the plea agreement as it had been reviewed. Id. at 18.

In light of this abundant evidence showing that Petitioner understood he had not been guaranteed a particular sentence, Petitioner's belated, self-serving allegations to the contrary are inadequate to prevail on this claim. "The representations of the defendant . . . at [the plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court [at a plea hearing] carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Moreover, "if the Rule 11 plea-taking procedure is careful and detailed," as is the case here, "the defendant will not later be heard to contend that he swore falsely." United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir.1975)). Accordingly, under Eleventh Circuit law, the stark contradictions between Petitioner's former sworn testimony and the unsupported, self-serving allegations he now offers compel the conclusion that Petitioner is not entitled to relief on this claim.

Furthermore, Petitioner's testimony that he was guaranteed a 19-year sentence conflicts with the testimony of the other witnesses who testified at the evidentiary hearing. Mr. Lyons testified that he never guaranteed Petitioner that pleading guilty pursuant to the government's offer would result in a 19-year sentence. (FTR 10:26:16 - 10:26:50.) Rather, Mr. Lyons explained to Petitioner that the 19-year figure was only an estimate, and that it related only to his Guideline range, not his ultimate sentence. (FTR 10:46:11 - 10:46:33, 11:00:09.) In addition, both Ms. Rhodes and Mr. Dallas denied that they would ever make

any guarantees as to the sentence that would be given following a guilty plea. (FTR 12:01:50 - 12:02:35, 12:06:45.) Mr. Dallas likewise unequivocally testified that he never represents a guideline estimate as a guarantee of a particular sentence. (FTR 12:09:20.)

Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (per curiam). Here, the Court specifically credits the testimony of Mr. Lyons, Ms. Rhodes, and Mr. Dallas over Petitioner's conflicting allegations. Mr. Lyons, Ms. Rhodes, and Mr. Dallas are well-known to the Court and have demonstrated ethical and diligent work in their respective positions. The notion that any of these three individuals – much less all three of them – would coerce a guilty plea or guarantee a particular sentence and then lie to the Court about having done so is not credible.

Ms. Rhodes and Mr. Dallas were consistently adamant that they would never represent an estimate of a Guideline sentence as a guarantee of the sentence the Judge would ultimately impose. Likewise, Mr. Lyons never represented the Guideline estimate he received from Mr. Dallas to be anything more than an estimate. Also, he explained to Petitioner the advisory nature of the Guidelines and advised Petitioner of the possibility that his actual sentence would be different from the estimate and the Guideline range. Notably, Mr. Lyons speculated that Petitioner may have expected to receive a maximum sentence of 19 years because of the estimate he had received. However, Petitioner's desire for a shorter prison term at the time of his sentence does not transform the estimate he received into a guarantee, when the testimony of Mr. Lyons, Ms. Rhodes, and Mr. Dallas makes clear that

no guarantee was given.

Petitioner is therefore left with his unsupported allegation that he was guaranteed a maximum sentence of 19 years. Petitioner's testimony as to this matter is severely undermined by the credible testimony of Mr. Lyons, Ms. Rhodes, and Mr. Dallas that no such guarantee was made. Petitioner's assertions are further undermined by the plea agreement itself, which contained no guarantee that a particular sentence would be recommended by the government or imposed by the Court. CR 107, 166, doc. no. 33. Furthermore, Petitioner has shown a total lack of credibility by admitting to having repeatedly lied under oath to Judge Bowen in his Rule 11 hearing. (FTR 11:19:10 - 11:21:26.) Indeed, Petitioner has exhibited a tendency to say whatever serves his present interest, with no regard at all for having sworn an oath to tell the truth.

Accordingly, the Court finds that Petitioner was not given any guarantee or hope of benefit with regard to his guilty plea; the Court likewise finds that Petitioner was not "coerced" into pleading guilty by misinformation regarding his sentence, as he alleges in his § 2255 motion. Furthermore, even if counsel failed to correctly inform Petitioner as to the sentence he might receive by pleading guilty pursuant to the plea agreement, which he did not, Judge Bowen did so at the Rule 11 hearing, such that no prejudice inured to Petitioner.

In addition, it bears mentioning that both Mr. Lyons and Ms. Rhodes agreed that the evidence against Petitioner in his criminal proceedings was overwhelming. The plea agreement he entered into allowed him to avoid several serious charges from the superseding indictment, and ultimately resulted in a sentence of 322 months. Assuming that Petitioner takes advantage of the opportunity for good conduct time, this sentence will be adjusted to

20

roughly 23 years. Although the Court specifically finds that Petitioner was neither coerced nor made any guarantees or given any hope of benefit in exchange for his plea, it is notable that as a result of his plea agreement, Petitioner avoided facing charges that could have led to a life sentence and instead received a sentence that is not far from the 19-year estimate which he now seeks to leverage into a collateral attack on his sentence.

In sum, the Court finds that Petitioner is not entitled to relief on his claim that his trial counsel provided ineffective assistance by misinforming him as to the sentence he might receive following his guilty plea.

### C. No Ineffective Assistance of Counsel for Failure to Raise Issues on Appeal

In Ground Three of his § 2255 motion, Petitioner claims that, as his appellate counsel, Mr. Lyons provided ineffective assistance by failing to raise certain issues on appeal. (Doc. no. 1, p. 4.) In particular, Petitioner argues that his appellate counsel should have challenged the following on appeal: (1) the District Court's failure to consider his request to withdraw his guilty plea; (2) the improper consideration of his accomplice's testimony; and (3) his conviction for possessing a firearm. (Id. at 5.)

In the context of a claim of ineffective assistance of appellate counsel, the Court's analysis under Strickland is further guided by the principle that appellate counsel is not ineffective when he fails to raise a frivolous argument on appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Stated another way, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984). Nor does the Sixth Amendment require

appellate advocates to raise every non-frivolous issue. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

Here, Petitioner has not shown that his appellate counsel failed to raise any meritorious claim on appeal. First, Petitioner's appellate counsel raised arguments very similar to two of the arguments Petitioner asserts he should have raised. That is, Petitioner's counsel argued on appeal that there was not an adequate factual basis for the Court to accept Petitioner's plea because his accomplice's statements – including those regarding the use of a firearm – were not credible. Lefever, 343 F. App'x at 597. The claims raised in Petitioner's appeal therefore addressed the District Court's consideration of his accomplice's testimony and the sufficiency of the evidence as to the firearm count. Thus, it cannot be said that counsel was ineffective for failing to raise issues on appeal when the issues were in fact raised. Even though Petitioner may disagree with the Eleventh Circuit's ruling, this Court will not disturb the appellate court's findings in these collateral proceedings.

The other claim that Petitioner claims his counsel should have raised on appeal is that the District Court improperly failed to consider his request to withdraw his guilty plea. However, Petitioner has not shown that this argument is meritorious. Moreover, a defendant has no absolute right to withdraw a guilty plea, and appellate review of a district court's decision to deny a defendant's request to withdraw a guilty plea is conducted pursuant to a deferential standard, making a favorable result on such an appellate challenge unlikely. See United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988) ("It is well settled . . . that there is no absolute right to withdraw a guilty plea . . . . The decision to allow withdrawal is left to the sound discretion of the trial court. The district court may be reversed only if its

22

decision is arbitrary or unreasonable." (citations omitted)). Thus, Petitioner has failed to carry his burden of demonstrating that any prejudice resulted to him as a result of this alleged error by Mr. Lyons.

In sum, Petitioner has not shown that his appellate counsel provided ineffective assistance by failing to raise issues on appeal. Accordingly, Petitioner is not entitled to relief on Ground Three of his § 2255 motion.

## III.     CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED,** that this civil action be **CLOSED,** and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this _11th_ day of March, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

23